In the Matter of the Accounting of UNION TRUST COMPANY as Substituted Trustee under the Will of RICHARD M. HOE, Deceased.

EMMA B. HOE, as Executrix of PETER S. HOE, Deceased, et al., Appellants; EMILY A. LAWRENCE et al., Respondents.

WILL — DEFINITION OF "UNMARRIED" AS USED IN TESTAMENTARY PROVISION. The word "unmarried" as used in a testamentary provision, by which the testator directed that in case of a daughter's death without issue, or upon the death of his wife or upon his own death, whichever should last occur, that portion of his estate bequeathed to his daughter should go to "such person or persons as would by law receive the same were I to die in and an inhabitant of the state of New York, unmarried and intestate as to said portion," is to be construed as meaning not married at the time of testator's death, not as never having been married, and where, after the testator's death, the daughter dies without issue, upon the death thereafter of the widow, such portion passes to testator's descendants and not to his collateral relatives.

*Matter of Union Trust Co.*, 92 App. Div. 620, affirmed.

(Argued October 4, 1904; decided October 18, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 23, 1904, which affirmed a decree of the New York County Surrogate's Court settling the accounts of the trustee herein.

The facts, so far as material, are stated in the opinion.

*R. Burnham Moffat, Morris J. Hirsch, Charles R. Hickox* and *Hector W. Thomas* for appellants. The primary meaning of the word "unmarried" is never having been married. (*Maberly* v. *Strode*, 3 Ves. 450; *Bell* v. *Phyn*, 7 Ves. 403; *Maugham* v. *Vincent*, 9 L. J. [N. S.] Eq. 329; *Hall* v. *Robertson*, 21 Eng. L. & Eq. 504; *Norman's Trust*, 22 L. J. [N. S.] Eq. 582; *Day* v. *Barnard*, 1 D. & S. 357; *Dalrymple* v. *Hall*, L. R. [16 Ch. Div.] 715; *Matter of Sergeant*, L. R. [26 Ch. Div.] 575; *Blundell* v. *Falbe*, 57 L. J. [N. S.] Ch. 576; *Matter of Chant*, 69 L. J. [N. S.] Ch. 601.) A testator is always presumed to have used the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he

has used them in a different sense. (*Luce* v. *Dunham*, 60 N. Y. 39.) It is an elementary rule that in all cases a construction is to be preferred which will give to every expression some effect rather than a construction which will render any of the expressions inoperative. (*Weston* v. *Goodrich*, 12 App. Div. 254.) This is not a case where the law would presume an intent on the testator's part to favor his issue to the exclusion of his brothers and sisters, and their descendants. (*Clarke* v. *Colls*, 9 H. L. Cas. 601.)

*Edward B. Whitney, Lucien Oudin, Charles C. Burlingham* and *Charles Lowell Barlow* for Emily A. Lawrence et al., respondents. The word "unmarried," when used by a married testator in speaking of himself, presumptively means "unmarried at the time of my death." (*Matter of Oakley*, 67 App. Div. 493; *Dalrymple* v. *Hall*, L. R. [16 Ch. Div.] 715; *Baldwin* v. *Rawding*, 2 B. & Ald. 441; *Matter of Kaufman*, 131 N. Y. 620; *Onderdonk* v. *Ackerman*, 4 Law Bull. 11; *Hoare* v. *Barnes*, 3 Brown C. C. 316; *Doe* v. *Cooke*, 7 East, 269; *Hardwick* v. *Thurston*, 4 Russ. 380; *Maugham* v. *Vincent*, 9 L. J. [N. S.] Ch. 329; *Coventry* v. *Earl of Lauderdale*, 10 Jur. 793; *Norman's Trust*, 3 DeG., M. & G., 965.) There is a strong presumption in favor of construing a will so that the direct descendants of the testator rather than his collateral relatives should receive his property. (*Lynes* v. *Townsend*, 33 N. Y. 558; *Scott* v. *Guernsey*, 48 N. Y. 106; *N. Y. L. Ins. & T. Co.* v. *Viele*, 161 N. Y. 11; *Matter of Devoe*, 171 N. Y. 281; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Kelso* v. *Lorillard*, 85 N. Y. 177; *Wood* v. *Mitcham*, 92 N. Y. 375, 379; *Matter of Brown*, 93 N. Y. 295; *Goodwin* v. *Coddington*, 154 N. Y. 283; *Brown* v. *Quintard*, 177 N. Y. 75.) There is nothing in the present will sufficient to rebut these strong presumptions. (*Matter of Reynolds*, 124 N. Y. 388.)

*Robert E. Deyo* for Mary S. Harper et al., respondents. Where a word has a double signification, the meaning unfavorable to the heirs and next of kin will be discarded. (*Are-*

son v. *Areson*, 3 Den. 458; *Lynes* v. *Townsend*, 33 N. Y. 558; *Gallagher* v. *Crooks*, 132 N. Y. 338; *People* v. *Kennedy*, 32 N. Y. 141; *Adams* v. *Olin*, 140 N. Y. 150; *Pinder* v. *B. R. R. Co.*, 173 N. Y. 519; *Ruppert* v. *B. R. R. Co.*, 154 N. Y. 90; *Conway* v. *Conway*, 37 Misc. Rep. 414; *Manning* v. *Ins. Co.*, 100 U. S. 693.)

CULLEN, Ch. J. The sole question presented by this appeal is the construction to be given to the will of Richard M. Hoe, who died leaving a widow and four daughters and the issue of a deceased daughter. Tersely stated, the testator gave all his residuary estate to his executors in trust to pay the income to his widow for life and upon her decease to divide said estate into five shares, to hold one in trust for each of the four daughters, and on the death of such daughter he gave the share so held in trust to the issue of said daughter then surviving in the same manner and to the same effect as if the daughter had died an inhabitant of the state of New York intestate, leaving no husband and had herself owned the share. Then follows in the gift in favor of the testator's daughter Annie C. Hoe this provision : "If however there shall be no such issue then surviving then upon the death of the said Annie or upon the death of my said wife or my death, whichever last occurs, I give, devise and bequeath the said 'Third Residuary Portion' unto such person or persons as would by law receive the same were I to die in and an inhabitant of the state of New York, unmarried and intestate as to said portion." Precisely similar provisions are made as to two of the other shares and as to the share which on the death of his widow is given absolutely to the issue of his deceased daughter if any be then living. In the gift of a share to one of his daughters the word "unmarried" before "intestate" is omitted. Annie Hoe died a few months after the testator unmarried without issue. On the death of the widow, which occurred subsequent to that of the daughter, this controversy over the disposition of Annie's share, or what would have been her share, if she had survived, arose

between the collateral relatives of the testator, who are the appellants here, and his descendants, the respondents.

The claim of the appellants is based on the provision by which in the contingency which has actually occurred the testator gave the share to the persons who would have received the same under the laws of this state had he died *unmarried* and intestate. The whole controversy turns upon the construction of the word "unmarried." The appellants contend that the primary meaning of that word is never having been married, and that had the testator never been married he could have had no lawful descendants entitled under our law to share in his estate, and the estate would go to his collateral relatives. The word "unmarried" has been the subject of judicial interpretation in a number of English cases. These cases may be divided into three classes. *First,* where there has been a gift to a class of women described in a will as unmarried. In such cases it is held that the term did not include widows, though there are decisions to the contrary (*Hall* v. *Robertson,* 4 DeG., M. & G. 781), and the opposite rule has been held in Pennsylvania. (*Conway's Estate,* 181 Pa. St. 156.) In the second class the question arose where there was a gift over in case of the death of a primary devisee or legatee unmarried. In this class of cases there has been a disposition to adopt the same construction and to hold that where the primary devisee had married, but left neither wife nor husband surviving, the gift over did not take effect. In such cases, however, the effect of the construction given to the term was to favor, not exclude, the heirs or issue of the testator or of the primary devisee or legatee. The third class, and by far the most numerous, is that of marriage settlements. A very common form of such settlements has been a trust, income payable to the wife during life, with or without a power of appointment over the remainder to be exercised by will; and in case of default in appointment, the trust estate to be distributed as if the wife had died unmarried and intestate. The great weight of authority is to the effect that in such cases "unmarried" is to be construed as not being married

at the time, and that it operates to exclude a husband, but not descendants, from sharing in the estate. (*Hoare* v. *Barnes*, 3 Brown C. C. 316; *Hardwick* v. *Thurston*, 4 Russ. 380; *Maugham* v. *Vincent*, 9 L. J. [N. S.] Ch. 329; *Norman's Trust*, 3 DeG., M. & G. 965; *Pratt* v. *Mathew*, 8 DeG., M. & G. 522; *Saunders' Trust*, 3 Kay & J. 152; *Clarke* v. *Colls*, 9 H. L. C. 601.) The learned counsel for the appellants practically concedes that this is the rule in the construction of marriage settlements, but insists that the contrary interpretation prevails in the construction of wills. We think not. In *Clarke* v. *Colls* (*supra*), the case of a marriage settlement, Lord Cranworth said: " It is impossible to suppose that the framers of the settlement intended to use the word in a sense which would exclude the possible issue of the wife in favor of her collateral relatives." It is elementary law that, in the construction of wills, an intention to disinherit an heir will not be imputed to a testator by implication, or when he uses language capable of a construction which will not so operate. (2 Jarman on Wills, 841, rule 5; *Areson* v. *Areson*, 3 Denio, 458; *Scott* v. *Guernsey*, 48 N. Y. 106; *Low* v. *Harmony*, 72 N. Y. 408; *Matter of Brown*, 93 N. Y. 295.) Where the circumstances and result are the same and reasons for a rule are the same we cannot see why the rule itself should not be the same, whether the instrument to be construed is a will or a marriage deed. The only ground I find for the notion that a different rule prevails in the construction of wills from that obtaining in marriage settlements is that in the former the questions presented have been whether a particular legatee answered the description of an unmarried person or whether a gift over on death of the primary legatee unmarried took effect. We have not been referred, however, to any case arising under a will where " unmarried " has been construed so as to exclude the heirs or descendants of the testator or of the primary legatee or devisee in favor of collaterals.

It is urged by the learned counsel for the appellants that under the terms of the will the next of kin of the testator

were to be ascertained, not at his death, but at the widow's death, and hence that it was unnecessary to use the term "unmarried" for the purpose of excluding the widow from any interest in the share. I think very probably the counsel is correct in the proposition as to the time when the testator's next of kin and heirs at law were to be ascertained. Still, the point is not entirely free from doubt and a prudent lawyer might well have inserted this provision to remove all question as to the testator's intention. It is far more natural to ascribe the provision to this motive than to an intent to disinherit descendants. To me the argument of Lord COTTENHAM in *Maugham* v. *Vincent* (*supra*) seems unanswerable. If the testator meant to exclude his descendants, why did he not say so? In this state two words, "without issue," in England possibly three, "without issue surviving," would have been sufficient for the purpose. Why did he leave the disinherison of his descendants as a matter of inference from a term of doubtful meaning? It cannot be said that the primary meaning of "unmarried" is never having been married. The most that can be said is that while either use of the word is correct and justified, not only by the lexicographers but by the decisions, the term is more frequently employed as referring to people who have never been married than to widows, widowers or divorced persons.

It may be suggested that the argument of the learned counsel for the appellants would, in the case of recent wills in this state, lack the foundation on which it now rests, to wit: that the property of an intestate who was never married necessarily goes to collaterals. Since 1897 illegitimate children take the personal estate of their mother in default of legitimate issue. Since the enactment of our statute of adoption in 1887, the most chaste spinster or bachelor may have children who inherit from them in case of intestacy.

We are of opinion, therefore, that the testator did not intend to disinherit his descendants, and that the order of the courts below should be affirmed, with separate bills of costs to the several respondents who appeared in this court and filed briefs.

O'BRIEN, HAIGHT, MARTIN, VANN and WERNER, JJ., concurred; GRAY, J., absent.

Order affirmed.