In the Matter of the Estate of STEPHEN D. MARSHALL, Deceased.

Surrogate's Court, New York County, August 25, 1931.

*Marshall McLean,* for the petitioners.

*Zabriskie, Sage, Gray & Todd* [*William E. Sims* of counsel], for Lisa M. Potter.

*Gilbert B. Ferris,* for Charlotte C. S. Marshall.

FOLEY, S.   In this proceeding for the construction of the will it becomes necessary to determine the legal effect of the word " unmarried " as used by the testator in his direction to pay the income of a trust fund to his unmarried daughters.   Specifically the question to be determined is whether all of the income is to be paid to Charlotte C. S. Marshall, a daughter who has never been married, or whether the income is to be divided equally between her and Lisa, a daughter who was married and subsequently divorced.   In other words, whether the divorced daughter is an unmarried woman and was intended by the testator to participate in the income of the fund.

The testator died on October 8, 1928.   He left a will and two codicils.   The will was executed on November 10, 1910.   The language of its 2d paragraph is the subject of the dispute here.   Mr. Marshall, the decedent, devised to his executors and trustees the " property now known as 121 East 81st Street, in the Borough of Manhattan, City of New York, in trust however, to sell the same as soon after my decease as practicable, and after paying out of the proceed such debts and charges against my estate as have not been paid at the time of such sale, and the expenses of such sale, to hold the net proceeds upon the following trust; to invest and reinvest said proceeds, to collect the income thereof, and to pay and distribute said income semi annually, or quarterly, as said Trustees may determine, among such of my daughters as

may be unmarried when such income payments are made, until the death of the two youngest of my daughters who, at the time of my death shall be living unmarried, and upon the death of the survivor of said two daughters to divide and distribute the *corpus* of said trust among my then living children and child or children of a deceased child or children, such child or children of a deceased child or children taking the share his, her or their parent would have taken if living, *per stirpes* and not *per capita.*

" It is my will that such of my unmarried daughters as may be living with me in said 121 East 81st Street at the time of my death, shall continue to occupy said house, without the payment of rent and without accountability for waste, until the sale thereof as hereinafter directed, provided however that the daughters who shall so occupy the same shall pay any taxes and assessments, which may become due and payable after my death."

On July 16, 1915, because of the fact that the residence named in the will had been sold, the testator executed a second codicil substituting his new residence at 150 East Eighty-first street in place of his former home. This instrument in all other respects ratified and confirmed the will and the first codicil. The terms of the latter document are immaterial here.

At the time of the execution of the will the decedent had four unmarried daughters and one married daughter, Mrs. Lisa Potter. She had married in 1905. In November, 1921, in the testator's lifetime, Mrs. Potter obtained in the Supreme Court of this State a decree of divorce from her husband, under the terms of which she was allowed alimony of approximately sixty dollars per week. She appears to have been in receipt of this alimony until April 10, 1928. Since that time no payments have been made to her although her former husband is still obligated under the decree. At the time of her father's death, therefore, she was divorced but not in receipt of alimony. At that time, also, there were living with him in his home three unmarried daughters, Trina, who has since died, Edith, who has since married, and Charlotte, who remained single and has recently been in receipt of all the income. Mrs. Potter had never resided after her marriage with her father.

We are required to ascertain the meaning of the word " unmarried " as employed by the testator. His intention must be found in the context of the entire will. I hold that Mr. Marshall intended to restrict the receipt of the income to such of his daughters as remained single and that he contemplated by his directions that a daughter who had been divorced should not participate.

The word " unmarried " is a word of flexible meaning. It may be interpreted as " never having been married," or " not having

a husband or wife at the time." (Jarman Wills [7th ed.], 592.) The cases favoring the first interpretation are *Hall* v. *Robertson* (21 Eng. L. & Eq. 504); *Dalrymple* v. *Hall* (L. R. 16 Ch. Div. 715); *Matter of Sergent* (26 id. 575); *Russell* v. *Lilly* (213 Mass. 530). Those favoring the latter are *Matter of Lessingham's Trusts* (L. R. 24 Ch. Div. 703); *Matter of Union Trust Co.* (179 N. Y. 261); *Matter of Kaufman* (131 id. 620); *Matter of Oakley* (67 App. Div. 493; affd., 171 N. Y. 652); *Onderdonk* v. *Ackerman* (62 How. Pr. 318; affd., 26 Hun, 580); *Matter of Conway* (181 Penn. St. 156).

The family circumstances and certain indications in the will lend support to the conclusion reached by me that Mr. Marshall employed the word in its significance of a daughter who had never married. He had provided in his will for the division of the residue of his estate among all his children, sons and daughters, without limitation upon the right of the daughters to take whether married or never married. There is similar evidence of a recognition of equality for all the children to be found in the remainder provisions of the trust here in question. But there is clearly expressed a special concern for the daughters living with him at the time of his death who remained unmarried. Under the last sentence of the 2d paragraph of the will they were to be permitted to remain in the family home free from any charge for rent. When the home was sold, pursuant to his direction, the income was to be divided among them. A substitute was thereafter provided by the father for their support. From time to time during the term of the trust, as the single daughters married, their interest in the income was to cease. They could look to their husbands for support. The spinster was to continue to be provided for out of her father's special bounty. There is some foundation for the contention that Mr. Marshall intended to restrict payment of income after the sale of the residence to the single daughters who were living with him at the time of his death. If that contention were sustained, Charlotte, the only remaining single daughter who resided in the home with him, would be entitled to the entire income. Under that theory the divorced daughter, Lisa, who did not live with him at the time, could not participate. Under that interpretation, also, the inconsistency between the two provisions of the paragraph may be reconciled. It is claimed that since the privilege to live in the home was restricted to the single daughters living with the testator at the time of his death, distribution of income after its sale was similarly intended to be limited. A single or married daughter, or a widow or divorcee, who was not living in the home at the time of the death, was excluded after that event from dwelling in it. Was it intended that they should be excluded also from sharing in the income of the proceeds

after the home had been disposed of? I do not find it necessary at this time to specifically hold that the payment of future income was limited to the daughters living with the decedent at the event fixed by him. These provisions of the will, however, throw strong light upon the significance of the word " unmarried " and indicate his special preference for those daughters who would remain single.

In the face of his expressed intention it is useless to apply the test as to what the testator would have done if the present situation of Lisa Potter had existed at the time of the drafting of the will or codicils. The arguments which are advanced by the opposing parties neutralize each other. Many questions are suggested. Would he have allowed a wealthy widowed daughter to share in the income with her less fortunate single sisters? What might have been his mental attitude to a widowed daughter left without means? What might have been his view towards a divorced daughter who was in receipt of substantial alimony? Would she have been allowed to share in the small income of the trust with her single sisters? Would the temporary suspension of alimony permit sharing in the income, or its resumption exclude participation? No test of the independent means of the beneficiary is found in the will. Marital status and not dependency must be considered. If a divorcee were intended to be included she would be entitled to income whether in receipt of alimony, or without it. All of these theories lead to mere guesses. We are concerned only with what he actually intended by the terms of his will, not with what he personally would have done in these hypothetical situations.

I have found in the will a strong preference and special solicitude by the father for the daughters who remained single. The relatively small annual income (it is less than $1,000 in this trust) now being paid to Charlotte should not be diminished by the frustration of Mr. Marshall's fairly expressed intent. The authorities in New York relied upon by counsel for Mrs. Potter do not, in my opinion, apply to the language of the will and to the special circumstances here. Necessarily the ascertainment of intent of a testator must vary with the terms of the particular will. In *Matter of Oakley* (*supra*) the word " unmarried," as used by the maker of the will, was held to mean " never having been married." But in the will in that case there was ample evidence of the testator's purpose to include a widow in the group of unmarried daughters. The word " unmarried " was associated in many places in the will with specific references to widowed daughters and their children. Provisions for the use of the home by a widow were made and little difficulty was found by the court in extending the meaning of the word " unmarried," as used by the testator, to a daughter who had been

previously married but was a widow at the particular event involved in the determination.

*Matter of Union Trust Co. (supra)* contains an excellent review of the conflicting decisions dealing with the definition of the word involved here. In that case, as here, the question of the intent of the maker of the will was the test. The court's decision turned not so much upon any fixed definition of the word " unmarried " as it did upon the application of the fundamental canon of construction which avoids an interpretation of design on the part of the testator to disinherit his heirs. Chief Judge CULLEN in his opinion speaks of the varying and flexible meaning of the word, when he states: " It cannot be said that the primary meaning of ' unmarried ' is never having been married. The most that can be said is that while either use of the word is correct and justified, not only by the lexicographers but by the decisions, the term is more frequently employed as referring to people who have never been married than to widows, widowers or divorced persons."

Submit decree construing the will accordingly holding that Lisa M. Potter is not entitled to participate in the income of the trust.