In the Matter of the Estate of CHESTER W. LYMAN, Deceased.

Surrogate's Court, New York County, June 19, 1942.

*Bleakley, Platt & Walker* [*Collier Platt* of counsel], for the petitioner.

*Hatch, McLean, Root & Hinch,* for Marguerite B. C. Lyman, respondent.

*William E. Ahrens* [*Thomas F. Cohalan* of counsel], for Louise Lyman Henderson, respondent.

*Jerome T. Nolan,* special guardian.

FOLEY, S. In this trustee's accounting various questions are presented as to the construction of the will and of a marital settlement agreement entered into between the testator and his former wife.

On November 30, 1920, Marguerite B. C. Lyman, the then wife of the testator, obtained a judgment of divorce against him. Thereafter on February 2, 1921, he entered into a settlement agreement with her. He died on April 7, 1926. Under the agreement the testator obligated himself to make certain annual payments to his divorced wife during her life or until she remarried when all payments to her were to cease. Under its terms the annual amounts payable to the divorced wife were subject to changes and dependent upon existing conditions which were the marital status of the testator's then infant daughter. In the agreement the testator also obligated himself to pay to his daughter an annual sum subject to certain conditions, and to settle upon her, on the death or remarriage of his wife, the sum of $20,000 or $40,000 dependent upon the daughter's marital status.

By the eighth paragraph of his will the testator created a trust of $95,000 to provide for his obligations under the settlement agreement. He directed the application of the income of the trust to the discharge of his obligations and " in addition so much of said principal sum as shall be necessary." The will then recited his obligation under the agreement to pay $40,000 or $20,000 to

the daughter and directs the trustee on the termination of the trust to discharge that obligation by paying whichever sum was due. The testator's daughter was married in July, 1937 and that status continues. For some time the income of the trust was sufficient to pay the annual sums due the divorced wife under the agreement. For several years past, however, the income has been less than the required periodic payments and conceded deficits have resulted. The present value of the corpus of the trust fund is estimated to be $77,000.

The substituted trustee in its petition seeks directions and determination of the following questions:

(1) Must the trustee use the principal of the trust created by the eighth paragraph of the will even to the extent of wholly exhausting the fund in order to make payments due the divorced wife of the decedent under his contractual obligations in the settlement agreement?

(2) If there is a limitation on the extent of the invasion then how much of the principal of the trust must be kept intact? This question involves the construction to be placed on the word " unmarried " as used in the eighth paragraph of the will wherein a gift is made to the daughter of the testator upon the termination of the trust. If " unmarried " was used in the sense of never having been married then a reserve of only $20,000 is necessary. If on the other hand the word " unmarried " was used in the sense of having no husband at the time the gift is to take effect then a reserve of $40,000 is necessary.

(3) Must the trustee reserve out of the trust fund an additional $25,000 to provide for a legacy in that sum to the daughter upon the termination of the trust created by the eighth paragraph of the will?

(4) What sum is now due and payable to the divorced wife from the principal of the trust created by the eighth paragraph of the will because of the deficiency of income in the trust and the annual payments due her under the settlement agreement?

(5) If an invasion of principal is authorized what securities of the trust should be sold for that purpose and are present values to remain constant or must the assets be revalued as each invasion of principal is made?

Differently stated in aid of simplification the two principal questions of construction involve (a) the extent to which the principal of the trust created by the eighth paragraph of the will may be invaded and (b) the interpretation to be placed upon the word " unmarried."

The surrogate holds that under the provisions of the eighth paragraph of the will, the trustee is authorized to invade the principal of the trust to make up the difference in income and the annual payments due the divorced wife under the settlement agreement. As previously stated, the estimated value of the corpus of the trust fund at the present time is $77,000. There is presently payable to the divorced wife for the amount of the accruing deficit the sum of approximately $3,700. After this payment, there will be an estimated corpus of $73,300. The continuing deficits in future years will be required to be paid out of the principal. It may be reasonably anticipated that even with the sale of capital assets a period of at least ten years will elapse before an actual situation will be presented requiring determination as to whether a balance of the trust fund of $40,000 will become necessary. The necessity for a construction of the settlement agreement and the will as to whether invasion of the balance of $40,000 may be made is undesirable at this time for two reasons. *First*, it is academic, and *secondly*, the residuary legatees, who might be required to make restitution of the excess amounts paid to them to satisfy the claims of the divorced wife and the daughter, have not been brought in as parties to this proceeding. If the former wife and daughter are creditors (*Matter of Bloomingdale*, 278 N. Y. 435), and if the amount of the trust fund should become insufficient to pay their debts, an accounting proceeding would have to be initiated with appropriate citation (setting forth the specific relief demanded) served upon those against whom restitution might be sought and an appropriate decree made under section 267 of the Surrogate's Court Act.

In ascertaining the intent of the testator in his use of the term "unmarried" in the gift to his daughter of part of the remainder of the trust under the eighth paragraph of the will recourse must be had to the settlement agreement in 1921. The will specifically states that the purpose of the trust is to provide for the testator's obligations under that agreement. Under the trust terms if the daughter is "unmarried" at the termination of the trust she is to receive $40,000 and if she is then married she is to receive $20,000. The term "unmarried" is a flexible one, dependent upon the intent of the testator in each particular case. (*Matter of Marshall*, 141 Misc. 457; affd., 235 App. Div. 666; *Matter of Union Trust Co.*, 179 N. Y. 261; *Matter of Kaufman*, 131 id. 620; *Matter of Oakley*, 67 App. Div. 493; affd., 171 N. Y. 652.)

It clearly appears from the provisions of this will and the settlement agreement that the testator used the term in the sense of not having a spouse at the time the gift was to take effect. In the

settlement agreement repeated reference is made to the divorced wife as "unmarried." Unquestionably the term was here used as meaning a person previously married but not having a spouse at the time of the execution of the agreement. There is no indication that the testator in applying the same term to describe the status of his daughter, both in the agreement and in the will, intended the word to have a different meaning. That it was used by him in the same sense in each instance is clearly evidenced by his use of the term "married" in subdivision 4 of paragraph 1 (b) of the agreement. This subdivision reads: "If the child, Louise Marguerite Lyman, marries while the mother is alive and married, the said child's annual income is to be at the rate of one thousand dollars ($1,000) per year." If the word "married" as applied to the divorced wife is interpreted to mean once having been married then the daughter will be entitled to the annual payment of $1,000 regardless of whether the mother remarries or not. Such an interpretation would defeat the testator's purpose expressed in subdivision three of the same paragraph to the effect that the daughter was to receive no income while she was married and while her mother was alive and remained unmarried. It is only by ascribing to the word "unmarried" the meaning of not having a spouse at the particular time that all of the provisions of the settlement agreement (incorporated by express reference into the will) may be reconciled. I hold, therefore, that the word "unmarried" as used by the testator in paragraph eighth of the will was intended to mean not having a spouse at the time and was not used in the sense of never having been married.

There is no necessity for reserving an additional $25,000 which on the termination of the trust is to be paid by the terms of the will to the daughter from the trust property "remaining after the discharge of my obligations under the above mentioned agreement." That bequest was intended as a matter of the bounty of the testator. It was not required by the settlement agreement. It was intended to be paid only if the value of the fund at the termination of the trust exceeded the amount required to be paid the daughter under the agreement. It was only after the satisfaction of the testator's obligations under the settlement agreement that this additional legacy was to be paid. No reserve to assure its payment is therefore necessary.

The divorced wife is entitled at this time to the payment from principal of the trust of the difference as set forth in paragraph nineteenth of the petition between the amount actually paid her from income and the amount due under the settlement agreement.

The surrogate will not advise the trustee as to what assets should

be sold in order to invade the principal of the trust and satisfy the payments due the divorced wife. Discretion must be exercised solely within the powers of the trustee conferred by the testator. In order, however, that the principal of the trust will not be reduced below the sum of $40,000 the trustee before making any future invasion of principal must value quarterly the trust assets to assure the protection of the minimum reserve of $40,000.

To summarize the questions presented in the petition, as restated by the surrogate in the beginning of this decision, are answered as follows: The answer to the first question is no. A present reserve of $40,000 is sufficient. The question of invasions beyond that sum must be made the subject of a subsequent application to this court when the actual conditions arise. The answer to the second question as to the amount of the reserve is $40,000. The answer to the third question is no. The answer to the fourth question is that the amount of the deficits must be paid to the former wife out of the principal of the trust. The answer to the fifth question as previously stated is that no instructions will be given to the trustee as to the specific assets required to be sold and, as also previously stated, the principal of the assets must be periodically revalued.

Submit decree on notice construing the will and settling the account accordingly.