**James B. POTTER and Mescal J. Potter, Plaintiffs–Appellants,**

v.

**Willard THIEMAN, Vicki Corley and Lynn Kaatz, d/b/a Daddio's Lounge, Defendants–Appellees and Third–Party Plaintiffs–Appellants,**

v.

**C.B. POTTER, and The City of Colorado Springs, Third–Party Defendants–Appellees.**

Nos. 87CA1021, 87CA1081.

Colorado Court of Appeals, Div. III.

Jan. 5, 1989.

Rehearing Denied Feb. 2, 1989.

Schaden, Heldman & Lampert, Victoria C. Heldman, Denver, for plaintiffs-appellants James B. Potter and Mescal Potter.

Wills and Gorsuch Kirgis, David Pitinga, Colorado Springs, for defendants-appellees and third-party plaintiffs-appellants Willard Thieman, Vicki Corley and Lynn Kaatz, d/b/a Daddio's Lounge.

Hall & Evans, Gordon L. Vaughan, Colorado Springs, for third-party defendants-appellees C.B. Potter and the City of Colorado Springs.

CRISWELL, Judge.

These consolidated appeals concern two rulings entered by the district court in the same wrongful death action. In one appeal, the plaintiffs, James B. Potter and Mescal Potter, parents of Anthony Potter, now deceased, appeal from the trial court's purported dismissal of an alleged claim of Michelle Ridenour, who may assert that she is the decedent's widow by virtue of a common law marriage to him. In the other appeal, defendants, Willard Thieman, Vicki Corley, and Lynn Kaatz, d/b/a Daddio's Lounge, appeal from the dismissal of their third-party complaint against the City of Colorado Springs (City) and C.B. Potter (not related to plaintiffs or decedent), a police officer with the City. In the case of each dismissal order, the court directed the entry of final judgment pursuant to C.R.C. P. 54(b). We dismiss the plaintiffs' appeal, and we affirm the judgment dismissing the third-party complaint against the City and Potter.

## I.

In February 1986, the plaintiffs, as parents of the decedent, commenced a wrongful death action against the defendants, who owned and operated the tavern where decedent met his death as a result of gunshots fired by James Spence. Their claim was that defendants served alcoholic beverages to Spence after he had become intoxicated and that this action on their part was a proximate cause of their son's death.

Nearly a year later, in January 1987, plaintiffs filed a motion to amend their complaint to add Michelle Ridenour as a party plaintiff, who, it was claimed, was decedent's common law wife at the time of his death. However, while an affidavit by plaintiffs' counsel accompanying this motion refers to an "amended complaint," no such amended complaint asserting a claim on Ridenour's behalf was tendered to the court. Moreover, although that affidavit asserted that plaintiffs' counsel had spoken with Ridenour and that she had "expressed a desire to participate" in the litigation, we can find nothing in the record on appeal which would indicate that an appearance was ever entered in the trial court either by Ridenour or by anyone on her behalf.

Defendants filed a written objection to plaintiffs' motion to amend in which they asserted, among other things, that the statute of limitations had run upon any claim that Ridenour might possess. In addition, relying upon *McGill v. General Motors Corp.*, 174 Colo. 388, 484 P.2d 790 (1971), they argued that her claim could not relate back to the date of the filing of plaintiffs' original complaint, since the two claims were inconsistent.

On January 28, 1987, the trial court entered a written order granting plaintiffs' motion to amend. However, it then purported to treat defendants' written objections thereto as a motion to dismiss the claim for relief to be asserted by Ridenour, although no claim on her behalf had been filed.

Counsel for plaintiffs assert in this court that they were given no notice of the entry of this order and that they were unaware of it until long after the record on appeal was filed with this court. However, the

record shows that counsel for both parties appeared before the court on April 3, 1987, and at that time the court advised counsel of its previous action. Indeed, in this hearing the court *read* the pertinent portions of its previous written order to counsel.

After this hearing, the court issued its written order in which it stated that the matter was before the court "upon defendant's [sic] motion to dismiss the amended complaint [sic]." This order then noted that, if Ridenour was in fact decedent's widow, plaintiffs had no claim to which the Ridenour claim could relate back under C.R.C.P. 15(c). Contrariwise, if Ridenour was not his widow, she had no claim. A later order, responsive to plaintiffs' motion to reconsider, noted that the court's decision "was a final judgment vis-a-vis Ms. Ridenour's rights" and granted plaintiffs' request for a C.R.C.P. 54(b) certification.

██ Michelle Ridenour has not filed a notice of appeal from the court's purported dismissal of her alleged claim and, indeed, has entered no appearance in this court. Rather, only plaintiffs filed such a notice. We conclude that they have no standing to prosecute an appeal from any judgment that purported to dismiss Ridenour's alleged claim.

Plaintiffs' claim for the wrongful death of their son is adverse to, and cannot simultaneously co-exist with, any claim asserted by Ridenour, who is his purported widow. Under the pertinent statute, a parent may assert a wrongful death claim only if there is no surviving spouse. Section 13–21–201(1), C.R.S. (1987 Repl. Vol. 6A); *McGill v. General Motors Corp., supra.*

The order of the trial court left plaintiffs' claim against defendants intact and ready to be scheduled for trial. The purported dismissal of the Ridenour claim, therefore, did not legally affect plaintiffs' claim. Under such circumstances, since plaintiffs were not aggrieved by the trial court's judgment, they have no standing to appeal from it. *See Miller v. Reeder*, 157 Colo. 134, 401 P.2d 604 (1965); *Camenisch v.*

*Nuccitelli*, 150 Colo. 141, 372 P.2d 85 (1962).

After the question of plaintiffs' standing was raised in this court, plaintiffs, but not Ridenour, moved to "amend caption of appeal" so as to add Ridenour as a party appellant. That motion is hereby denied.

Plaintiffs' interest is, as noted, adverse to Ridenour's interest, and they cannot, therefore, represent her. Just as they have no standing to prosecute this appeal, they lack any standing to have Ridenour added as an appellant.

Thus, plaintiffs' appeal must be dismissed. In dismissing their appeal, however, we mean to express no opinion as to the validity of the trial court's order or its legal effect, if any, upon Ridenour.

## II.

██ The defendants ground their appeal of the dismissal of their third-party complaint against the City and Potter upon the assertion that the trial court erred in concluding that these two parties owed no duty to defendants. We agree with the trial court.

The evidence relied upon by the trial court in granting summary judgment consisted of police reports, police testimony at the preliminary hearing for the assailant Spence, and two affidavits from Potter and another officer. The undisputed evidence reflects that, on the night prior to decedent's killing, police responded to Spence's home to answer a call relating to a domestic dispute. They found the house in considerable disarray, and Spence's wife had the appearance of having been involved in a physical altercation, although she appeared not to be injured. She was described as being noticeably upset and wanted the officers to remove Spence from the house. Since she refused to sign a complaint, however, they refused to do so. Although Spence gave the appearance of having been drinking, he was not intoxicated.

When the police informed the wife that Spence would not be removed, she told

them that, if they would not do anything, she would use the guns in the house to kill him. The officers then conducted a search of the house, finding several guns. Thereafter, at the officers' behest and while he was reluctant to do so, Spence finally turned over five guns (one shotgun, two rifles, and two hand guns) to the officers to deposit in the police department's evidence room. Spence was advised how to obtain the release of these guns on the following day.

The next afternoon Spence appeared at the evidence room and obtained possession of the five guns. The officer who returned the guns to him said that he appeared to have been drinking sometime previously, because he had a strong odor of alcohol on his breath and his eyes were red, but that he did not appear to be under the influence or intoxicated. One of the guns released to him was later identified as the weapon used to kill plaintiffs' son.

It is defendants' claim that, considering the total circumstances, the police were negligent in refusing to arrest Spence and in returning the guns to him. Thus, because they claim that that negligence was a cause of the death of plaintiffs' son, defendants seek to recover from the City and Potter any amounts that they might be adjudged to owe to plaintiffs.

The trial court dismissed their claim, however, concluding that the Supreme Court's opinion in *Leake v. Cain,* 720 P.2d 152 (Colo.1986), required it to determine whether any duty was owed by the City or Potter by the application of "traditional tort principles." Application of these principles to the undisputed facts presented to it caused that court to conclude that no duty was owed to defendants by either of the third-party defendants. We agree with the trial court's analysis.

In assessing defendants' claim that the trial court erred in reaching this conclusion, we first observe that defendants do not argue that any specific legislative act imposed any duty upon the police officers either to arrest Spence or to refrain from returning the guns to him. Consequently, the issue presented to the Supreme Court

in *Board of County Commissioners v. Moreland,* 764 P.2d 812 (Colo.1988) need not be faced by us.

■ In *Leake v. Cain, supra,* the Supreme Court affirmed a summary judgment in favor of police officers who had been sued after a drunken, unruly teenager that they had released into the custody of his brother was allowed to drive by the brother and caused a fatal accident. The Supreme Court in *Leake* expressly disavowed the "public duty doctrine," which incorporated the principle that a public official in performing a public duty owes that duty to the public in general and not to any individual member of the public. In abolishing this concept, the Supreme Court concluded that the question of the existence of a duty is to be determined without regard to the defendant's public status. Accordingly, a public employee will be held to have a duty to another individual only if a private party, in the same or similar circumstances, would have such a duty.

■ The general rule, approved in *Leake,* is that an actor owes no duty to prevent a third person from harming others, absent a special relationship between the actor and the person causing harm, or between the actor and the person who was harmed. *See* Restatement (Second) of Torts § 315 (1965). In *Leake,* the court concluded that there was a "special relationship" during the time that the officers had the drunken teenager in custody, but that the relationship ended when he was released to his brother. Moreover, the release to his brother did not, as a matter of law, constitute negligence because it was not foreseeable that the brother would violate his promise not to allow the drunken teenager to drive.

Similarly, here, even if it is assumed that, by taking custody of Spence's guns, the police created a special relationship between Spence and them, that relationship ended when the guns were returned. Moreover, there was no evidence to suggest that it was reasonably foreseeable that Spence would cause harm to some third party at a bar. The guns were temporarily confiscated, not because of some action that the police feared he might take, but because of his *wife's* threats to Spence.

Further, the evidence stands undisputed that, although he had been drinking, Spence was not intoxicated, either at the time the police visited him at his home, or at the time they turned the guns over to him later.

Under these circumstances, we hold, as a matter of law, that the police could not reasonably foresee a danger from Spence that would involve some third party completely unassociated with his prior domestic difficulties. *See Perreira v. State*, 738 P.2d 4 (Colo.App.1986) (*cert. granted* June 8, 1987). Hence, the dismissal of the claim based upon these circumstances was proper.

The plaintiffs' appeal is dismissed. The judgment of the trial court dismissing defendants' third-party complaint against the City and Potter is affirmed.

VAN CISE and STERNBERG, JJ., concur.