[No. 3641.]

HINDRY v. HOLT.

1. DEATH BY WRONGFUL ACT—RIGHT OF ACTION.

At common law no right of action existed for damages resulting from death through wrongful act or negligence. Such right exists only by virtue of our statute. Gen. Laws, 1877, p. 343; Chapter 37, Mills' Ann. Stats.

2. SAME.

The words "heir or heirs" as used in subdivision "second," sec. 1508, Mills' Ann. Stats. does not include all those entitled to share in the estate of a person dying intestate, but was intended to mean "child or children" and limit the right of action to lineal descendants.

3. SAME.

In case of death by negligence or wrongful act where the deceased had never been married and left no children, right of action is given exclusively to the father and mother, or the surviving parent.

4. SAME.

Where an unmarried man who supported the child of a deceased brother, said child being his only heir, was killed by negligence, the child has no right of action under the statute, for damages.

*Appeal from the District Court of Arapahoe County.*

THIS is an action brought in behalf of Catherine M. Holt by C. J. Burns, her guardian *ad litem*, against J. B. Hindry, to recover damages for the death of Thomas Holt, her uncle. The right to such recovery is predicated upon the following facts:

On October 6, 1893, Thomas Holt, an unmarried man thirty-eight years of age, was employed by J. B. Hindry,

the defendant, as a common laborer; and while engaged
under his direction in excavating a sewer trench in North
Denver, the ground caved in upon him, causing his death.
He died intestate, leaving surviving him Catherine M. Holt,
a daughter of his deceased brother, an infant five years of
age, as his only heir. From November, 1890, to September,
1892, he resided in the city of Denver, with Catherine and
her mother, and contributed almost entirely to her support;
furnished her clothing, and the provisions and necessaries
for the family. In September, 1892, plaintiff and her mother
moved away from the city of Denver, and from that time
until his death, he continued to support plaintiff, sending
money to her mother for that purpose; and if he had sur-
vived he would have continued to support, educate and
maintain her. The cause was tried to a jury, and resulted
in a verdict and judgment for $4,500. To reverse this judg-
ment defendant Hindry prosecutes this appeal.

Mr. GEO. W. MILLER, Mr. DANIEL SAYER and Mr. JOHN
H. REDDIN, for appellant.

Messrs. CAYPLESS & BROWN, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

Among the many objections raised by the specifications of
error, we deem it necessary to notice the one only which
challenges the right of appellee to maintain the action, since,
in our opinion, this question is decisive of the case. No
right of action for damages resulting from death through
wrongful act or negligence was given by the common law,
and such right exists only by virtue of our statute. Gen.
Laws, 1877, p. 343; Chap. 37, Mills' Ann. Stats.

This statute gives the right of action, and designates the
party or parties who may sue for recovery of damages in
cases of this kind, and classifies them as follows: *first*, hus-
band or wife of deceased; *second*, if there be no husband or
wife, or he or she fails to sue within one year after such
death, then by the heir or heirs of deceased; *third*, if such

deceased be a minor or unmarried, then by the father or mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor.

Though similar in its general features to the original English statute (9th and 10th Victoria C. 93) known as "Lord Campbell's Act," and the statutes on this subject generally adopted in this country, it will be seen that our act differs from all of them in its designation of the parties that may sue. Most of them provide that the action may be brought by the personal representatives of the deceased, for the benefit of his widow and next of kin, while, by the terms of our statute, the right to sue is vested, in the first instance, in the surviving husband or wife to the exclusion of all others; and the existence of the right in the second class named is wholly dependent upon the fact that there be neither *husband* or *wife* surviving, or that he or she shall have waived the right by failing to sue in the time prescribed; thus evincing an intention on the part of the law-making power to confer this new right of action upon the second class, only in the event the decedent, at the time of death was, or had been, a married person, and should leave surviving lineal descendants. This is made more manifest by the third subdivision, whereby the right of action is exclusively given to the father and mother in case the deceased was a minor or unmarried. By construing the words "heir or heirs" as used in the second subdivision to mean "child or children" the purpose of this character of legislation is carried out, which is to compensate those who suffer pecuniary loss by reason of the death. While, on the other hand, if the words "heir or heirs" are to be construed as meaning all those who, under the statute of descents and distributions, would be entitled to inherit, then collateral kindred, however remote, who would derive no pecuniary benefit from the continuance of the life of deceased, as well as the direct descendants, may maintain the action; a result wholly inconsistent with the plain purport and object of the statute.

And furthermore, such construction would render the third subdivision wholly useless and unnecessary, since the father and mother would, by our act of descents and distributions, be the heirs in case the deceased was a minor or unmarried, and consequently included within the class of beneficiaries described in the second subdivision.

In order, therefore, to give consistency and effect to all of the foregoing provisions, and to carry out the beneficent purpose of the statute, the words "heir or heirs" as used in the second subdivision must be held to be synonomous with child or children. In *Jordan's Admr. v. C. N. O. & T. P. Ry. Co.*, 89 Ky. 40, the supreme court of Kentucky had under consideration the meaning to be given to the word "heir" as used in their statute, which provided that the "widow, heir or personal representative" of the deceased should have the right to sue; and it was held that it should be so limited as to mean child, and not extended so as to include collateral kindred of the deceased. Lewis, chief justice, in speaking for the court, says:

"The word 'heir' can not, according to its 'peculiar and appropriate meaning in the law' be used in relation to damages recoverable under the section, being applicable to real estate of inheritance, and not to personalty. It must, therefore, be interpreted to mean either distributee or child. To make it mean distributee would, it seems to us, be contrary to the reason and purpose of the law, which was intended to give redress, reparation or compensation to those only who are injured pecuniarly by the loss or destruction of the life of husband and father."

To the same effect is *Henderson's Adm'r v. Ky. Cent. R. R. Co.*, 86 Ky. 389; *Cincinnati, N. O. & T. P. Ry. Co. v. Adams' Adm'r*, 13 S. W. Rep. 428. The case of the *Denver, S. P. & P. R. Co. v. Wilson*, 12 Colo. 20, is relied on as recognizing the right of brothers and sisters of the deceased to maintain an action under this statute. That was an action brought by the parents to recover damages for the death of an unmarried son; and the question as to the right of col-

lateral kindred to maintain the action was in no way involved; and moreover, the language used, aside from being mere *dictum* is found in a quotation from the case of *The City of Chicago v. Keefe*, 114 Ill. 222, cited in support of a different proposition. The case, therefore, is not an authority for the rule claimed by appellee. Our conclusion is that the words "heir or heirs" as here used, do not include all those entitled to share in the estate of a person dying intestate, under our statute of descents and distributions; but were intended to mean "child or children" and limit the right of action to lineal descendants of the deceased. In this case the deceased had never been married, and had no children. Under such circumstances, the right of action is given, as we have seen, exclusively to the father and mother. This, in itself, precludes the plaintiff from maintaining the action. The judgment of the district court is therefore reversed, and the cause remanded, with direction to dismiss the action.

*Reversed.*