[No. 8485.]

MYERS V. DENVER & RIO GRANDE RAILROAD COMPANY.

WORDS AND PHRASES—*Unmarried.* The statute giving an action for wrongs resulting in death provides that if the deceased be ''unmarried,'' the parents, or the survivor of them, shall be entitled to the action (Rev. Stat., sec. 256). (305.)

Husband and wife came to their death in the same casualty, but the wife survived the husband about thirty minutes. *Held* that the mother of the wife was entitled to the action. (305, 311.)

*Error to Denver District Court.* Hon. JAMES H. TELLER, Judge.

Messrs. DANA & BLOUNT and Mr. RICHARD A. SMITH, for plaintiff in error.

Mr. E. N. CLARK and Mr. R. G. LUCAS, for defendant in error.

SCOTT, J., delivered the opinion of the court.

The complaint in this case alleged that the plaintiff is the mother and the sole surviving heir of Linnie M. Kirk; that the said Linnie M. Kirk and her husband, Mahlon Z. Kirk, were on the 4th day of July, 1912, and while riding

in an automobile, killed in a collision with one of defendant's trains; that the accident occurred at a point in the City of Denver where defendant's tracks cross Mexico street, along which the Kirks were driving; that the accident and death of Mrs. Kirk and her husband were caused by the negligence of the defendant company; that the husband Mahlon Z. Kirk, was instantly killed, and that the plaintiff's daughter, wife of the said Mahlon Z. Kirk, died about thirty minutes subsequent to the death of the husband. The complaint further alleged that the plaintiff was dependant upon her deceased daughter for support.

The only question presented is, whether or not the plaintiff has the legal capacity under our statute, to recover or the negligent killing of her daughter. This was raised on demurrer, sustained by the court, and judgment rendered for the defendant.

Section 2056 Rev. Stat. 1908, provides that the right of recovery in such case shall be:

"First—By the husband or wife of deceased, or

Second—If there be no husband or wife, or he or she fails to sue within one year after such death, then by the heir or heirs of the deceased, or

Third—If such deceased be a minor or unmarried, then by the father or mother who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor."

The whole questions seems to turn upon the construction of the word "unmarried," as used in and contemplated by the statute.

Was Mrs. Kirk, the daughter of plaintiff, and who survived her husband thirty minutes, an "unmarried" woman at the time of her death, within the contemplation of the statute, or shall the word "unmarried" be limited in meaning to one who has never been married, as contended by the defendant in error.

The statute as it involves the particular question here has not been construed by this court, but in the case of *Hindry v. Holt,* 24 Colo. 464, 51 Pac. 1002, 39 L. R. A. 351, 65 Am. St. 235, wherein the purpose of the statute was pointed out, and a broad and common sense construction given to it, Mr. Justice Goddard held that the words "heir or heirs," do not include all those entitled to share in the estate of a person dying intestate, but was intended to mean "child or children," and limited the right of recovery to lineal descendants.    It is there said:

"Though similar in its general features to the original English statute (9th and 10th Victoria C. 93) known as 'Lord Campbell's Act,' and the statutes on this subject generally adopted in this country, it will be seen that our act differs from all of them in its designation of the parties that may sue.   Most of them provide that the action may be brought by the personal representatives of the deceased, for the benefit of his widow and next of kin, while, by the terms of our statute, the right to sue is vested, in the first instance, in the surviving husband or wife to the exclusion of all others; and the existence of the right in the second class named is wholly dependent upon the fact that there be neither husband or wife surviving, or that he or she shall have waived the right by failing to sue in the time prescribed; thus evincing an intention on the part of the lawmaking power to confer this new right of action upon the second class, only in the event the decedent, at the time of death was, or had been, a married person, and should leave surviving lineal descendants."

In support of this view as to the second class entitled to recover, the provision as to the third class named in the statute, being that one now under consideration, was referred to, and it was said:

"This is made more manifest by the third subdivision whereby the right of action is exclusively given to the

father and mother in case the deceased was a minor or unmarried. By construing the words 'heir or heirs' as used in the second subdivision to mean 'child or children' the purpose of this character of legislation is carried out, which is to compensate those who suffer pecuniary loss by reason of the death."

It is plain that we must construe the statute in the light of its purpose, and while it is penal in character, yet the fact that the forfeiture or penalty is recoverable by the kin of the deceased, manifests a purpose to in a measure protect or compensate dependent relatives by blood or direct marriage. It was said by Mr. Justice Bailey in *D. & R. G. Co. v. Frederick*, 57 Colo. 90, 140 Pac. 463:

"The purpose and policy of the section manifestly is to guard and protect human life against the fatal consequences of the negligence, unskillfulness or criminal intent of any officer, servant, agent or employe of any common carrier, whether a corporation or individual, while engaged in running, conducting or managing any locomotive, car or train of cars, or other public conveyance. Undoubtedly, the provision was intended to enjoin upon such representatives the utmost skill and diligence in the discharge of their important duties as guardians of human life, and upon the carrier itself the exercise of great care and caution in their selection, to the end that better service be secured, with fewer accidents and less destruction of life. The recovery, whatever it may be in amount, is denominated a forfeiture, and the fact that it goes to the next of kin cannot be said to affect or change the character of the provision, as clearly indicated by its express terms."

With the purpose of the statute so clearly defined by the cases cited, we should not give such narrow and restricted meaning to the word "unmarried" as is contended here. We cannot say that it was the purpose of the legislature to exclude the dependent mother, simply because her unmarried deceased daughter, had once been married. Such a con-

struction is too narrow in the light of the purpose of the statute, and we find no authority to support such a conclusion in any decided American case.

The judicial interpretation of the word "unmarried" as we find it, seems to have been well stated in *People v. Weinstock*, 140 N. Y. Supp. 458, as follows:

"The authorities do not agree on the meaning of the word 'unmarried.' Both in the construction of wills, in civil causes generally, and the interpretation of penal statutes, there has been great differences of opinion as to whether it is intended to include persons who have never been married, or whether it applies to those who have been married, and are at the time single and unmarried."

But the great weight of authority as to the meaning of the word, as defined by lexicographers and law writers, and as construed by courts, includes within the term "unmarried," not only those who have not been married, but who are at the time unmarried.

Construction of the meaning of the word seems to be found only in will cases, those involving deeds, and in criminal cases, generally, if not entirely, confined to seduction. As regards will cases it seems to be the general rule to give to the word broader meaning and to include widows and even divorcees. The rule as to the meaning of words in construing statutes, is quite concisely and correctly stated in *Hunt v. Law*, 132 App. Div. 406, 116 N. Y. Supp. 992, as follows:

"'In construing statutes words are to be used in their technical meaning, if they have acquired such meaning, and in their popular meaning, if they have not, unless adequate grounds are found either in the context or in the consequences which would follow from a literal interpretation if concluded that such interpretation does not give the real intention of the legislature."

It will not be contended that in the popular meaning,

the word "unmarried" is limited to one who has never been married, for in popular use the word broadly includes one who is not married at the time, and Webster defines it as "not married." Neither does the term have a fixed technical meaning in the law. The definition given in 29 Am. & Eng. Law, 347, seems to be sustained by the weight of authority, as follows:

"The term 'unmarried' frequently occurs in deeds of trust and wills, and has been the subject of judicial construction. Its primary meaning is, never having been married, but the term is of flexible meaning, and 'slight circumstances, no doubt, will be sufficient to give the words its other meaning' of 'not having a husband or wife at the time in question.' "

In *In re Kaufman,* 61 Hun. 331, 16 N. Y. Sup. 113, the court in construing a will statute, said:

"Section 44, 2 Revised Statutes, p. 64, is as follows: 'A will executed by an unmarried woman shall be deemed revoked by her subsequent marriage.' It is claimed by the appellant that the testatrix, being a widow at the time she executed this will, was not an unmarried woman upon the theory that the statute meant a woman who had never been married. Although the counsel, both for appellant and respondent, have devoted much time to the discussion of this proposition, we do not see that there is any room for argument, as a widow is certainly not a married woman; and if she is not the statute applies."

In the same case, and upon review by the New York Court of Appeals, 30 N. E. 242, 15 L. R. A. 292, in sustaining the rule of the Supreme Court, the reasons therefor were stated as follows:

"The appellant attempts an argument upon the meaning to be given to the words 'unmarried woman' in the statute, and seeks to give substance to it by reference to some cases arising upon the construction of wills, and where the

discussion bore upon the presumed intention of the testator in his gifts or limitations of property. But such cases can have no influence upon the question of what is accomplished by the Revised Statutes in the provisions that 'a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage.' Chapter 6 of title 1 of article 3. It was a recognition of the common-law-rule, which, in the operation of the statute upon the civil status of the married woman, is unaffected by the enlargement of her legal capacities. At common law, the feme sole, in marrying, merged her legal identity in that of her husband. In the unity of person caused by the marriage relation the wife lost the control of her property, and hence of her will. Under our statutes that identity of person is only affected and separate legal capacity is only conferred upon the wife to the precise extent mentioned in the enabling acts. We have repeatedly held, the common law has been no further abrogated than is read in the statute. Nothing has been enacted which alters the provision that her will is revoked by a subsequent marriage. There is sufficient reason for the continuance of the rule in the changed relations of the woman. Her new status, as wife, induces the presumption of a new testamentary intention, and demands a new testamentary act. The unmarried woman, referred to by the statute, must be defined according to that rule of statutory construction which requires that the words used in legal enactments shall be understood and taken in their ordinary and familiar significance. So read, the unmarried woman of the statute is the woman who is not in a state of marriage. That the legislature could have had any other idea is both inconceivable and unreasonable."

In *Re Union Trust Co.* 179 N. Y. 261, 72 N. E. 107, the same court, in construing a will under the statute, and a testamentary provision, "unmarried and intestate," to mean, "not married at the time of death, and not as never

having been married." The court there distinguishes the class of cases, cited by defendant in error here to sustain its contention, seemingly so clearly and convincingly as to require no further comment in this case.

In *Conway's Estate*, 181 Pa. St. 156, 37 Atl. 204, will be found an exhaustive consideration of authorities and it was there held that in the term "spinster or unmarried nieces," widows were entitled to take under the will.

The question was well considered in the case of *Peters v. Balke*, 170 Ill. 304, 48 N. E. 1012, where the court said:

"In other words, appellant claims that the trustee had no right to convey the property to the appellee, because Edward Muller did not die, never having been married to Magdalena Hubacher, while appellee claims that such trustee had a right to make such trust deed, because the said Edward Muller at the time of his death was not married to said Magdalena Hubacher, she having died before his death. There is conflict in the authorities as to the meaning of the word 'unmarried.' Undoubtedly its original and usual meaning is 'never having been married.' 'But the term is a word of flexible meaning, and slight circumstances, no doubt, will be sufficient to give the word its other meaning of not having a husband or wife at the time in question.' (27 Am. & Eng. Enc. of Law, p. 697). In *Clarke v. Colls*, 9 H. L. 601, Lord Cranworth said, that the word 'unmarried' 'may without any violence to language, mean either 'without ever having been married,' or 'not having a husband living at her death;' 'and, in that case, it was held, that 'unmarried' is a word of flexible meaning to be construed with reference to the plain intention of the instrument where it is used, and that as used in the settlement there, it meant, 'being without a husband at the time of the death.'"

In *Re Trust Company, supra*, the court said:

"The great weight of authority is to the effect that

in such cases, 'unmarried' is to be construed as 'not being married at the time,' and that it operates to exclude a husband but not descendants from sharing in the estate. *Hoare v. Barnes,* 3 Brown C. C. 316; *Hardwick v. Thurston,* 4 Russ. 380; *Maughan v. Vincent,* 9 L. J. (N. S.) Ch. 329; *Norman's Trust,* 3 De. C. M. & G. 964; *Pratt v. Mathew,* 8 De. C. M. & G. 522; *Sander's Trust,* 3 Key. & J. 152; *Clarke v. Colls,* 9 H. L. C. 601."

In the construction of a statute, the court of Civil Appeals of Texas, in the case of *Anderson v. McGee,* (Tex. Civ. Ap.) 130 S. W. 1040, held that a divorced daughter was an unmarried daughter within the meaning of the statute. It was there said:

"It has been held that a widowed daughter, who had after the death of her husband returned to and made her home with the family, came within the meaning of the term 'unmarried daughter,' and was protected in her homestead rights after the death of her parents. See *Childers v. Henderson,* [76 Tex. 664, 13 S. W. 481], and *Krueger v. Wolf,* [12 Tex. Civ. Ap. 167, 33 S. W. 663]. This being true, we can see no difference between the legal status of a widowed daughter and a divorced daughter, and the reason for the exemption in favor of the one appeals as strongly in favor of the other; and we therefore hold in the instant case, the estate being insolvent, that she was entitled to her homestead rights at the death of her mother in the property sought to be partitioned, by reason of which the title to said property, *eo instanti,* upon the death of her mother, vested in all of the heirs of said estate, freed from the claims of its creditors."

In the well considered case of *Mott v. Scanlon,* 19 Cal. Ap. 250, 125 Pac. 762, the District Court of Appeals held that under a statute which provided in case of the death of a policeman, after ten years service, his widow or children, or if there be no widow or children, then his mother or "un-

married sisters," shall be entitled to $1,000 from a fund created by the act, that the term "unmarried sisters" as so used did not mean "never having been married," but included sisters of the officer who were widowed at the time of his death. The court there said:

"Section 56 of the Civil Code provides that 'any unmarried male of the age of eighteen years, * * * and any unmarried female of the age of 15 years, etc., are capable of consenting to * * * marriage.' Section 1300 of the same Code, prior to the amendment of 1905, provided that a will executed by an unmarried woman shall be deemed revoked on her subsequent marriage. * * * In neither of those instances did the Legislature, by the word 'unmarried,' intend to designate only, one who had never entered the state of matrimony; and we are aware of no instance where the Legislature in this state has employed the term in its narrow sense.

No reason suggests itself why the law-making power should have intended to prefer one class of sisters to the other and as the legislature has on other occasions used the word to mean not being married at the particular time, we feel justified in so construing it in this act."

It seems to us to be the plain purpose and intendment of the law, to make no such subtile nor narrow distinction in the use of the term "unmarried" as contended by the defendant in error.

The judgment is reversed.

GABBERT, C. J., and GARRIGUES, J., concur.