No. 24395.

John K. McGill, Jr., and Lovera M. McGill, parents and survivors of John K. McGill IV, Decedent *v*. General Motors Corporation, a Delaware corporation.

(484 P.2d 790)

Decided May 3, 1971.

FRIEDMAN, BADER & MOORE, CHARLES A. FRIEDMAN, DAVIS W. MOORE, JR., for plaintiffs in error.

WELLER, FRIEDRICH, HICKISCH & HAZLITT, MICHAEL E. OLDHAM, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFFS in error are the parents of John K. McGill IV and were plaintiffs below in a wrongful death action against General Motors, Inc., defendant in error and defendant below.

At the time of his death, the decedent was 23 years of age, married and childless. He was survived by his parents and his wife. He had been killed when his car went out of control allegedly caused by a defect in the car.

The decedent's wife failed to bring an action to recover for his alleged wrongful death, and consequently in May

1969, his parents attempted to bring such action against General Motors, Inc. as the manufacturer of the allegedly defective vehicle. Subsequently, the defendant filed a motion asking for summary judgment on the grounds that under the Colorado Wrongful Death Statute the parents of a child who is both married and of age at the time of his death have no standing to maintain such an action. The trial court granted the motion, and the plaintiff-parents have brought this writ of error.

## I.

Plaintiffs allege first that they are the "heirs" of the decedent for purposes of bringing suit under the Colorado Wrongful Death Statute. The pertinent statute is C.R.S. 1963, 41-1-1(1) which provides that a wrongful death action may be brought:

"(b) By the husband or wife of the deceased; or

"(c) If there be no husband or wife, or if he or she fails to sue within one year after such death, then by the *heir or heirs* of the deceased; or

"(d) *If such deceased be a minor or unmarried,* then by the father or mother who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor." *Id.* (Emphasis added.)

Plaintiffs urge that we interpret the statute as follows: The decedent's wife had the sole right to bring an action for his wrongful death for one year. When she failed to bring suit within this period, the right to maintain the action passed "to the heir or heirs of the deceased"; that both under the common law and Colorado laws of descent and distribution (C.R.S. 1963, 153-2-1), parents of a deceased are included within the definition of "heir or heirs of the deceased" and are therefore entitled to bring the suit under section 41-1-1 (1) (c), *supra.*

We hold the judgment of the trial court was correct and affirm.

■ The statute giving the right to sue for wrongful death was first construed in 1897 in the case of *Hindry v.*

*Holt,* 24 Colo. 464, 51 P. 1002, wherein a niece sought damages for the wrongful death of her uncle who had provided her with support. Although the niece is in the line of descent under the Colorado laws of descent and distribution, *supra,* this court rejected the argument that she was included within the meaning of the term "heir" as used in section 41-1-1 (1) (c), *supra.* In *Hindry v. Holt, supra,* we said:

*"By construing the words 'heir or heirs' as used in the second subdivision to mean 'child or children' the purpose of this character of legislation is carried out, which is to compensate those who suffer pecuniary loss by reason of the death. While, on the other hand, if the words 'heir or heirs' are to be construed as meaning all those who, under the statute of descents and distributions, would be entitled to inherit, then collateral kindred, however remote, who would derive no pecuniary benefit from the continuance of the life of deceased, as well as the direct descendants, may maintain the action; a result wholly inconsistent with the plain purport and object of the statute.*

"And furthermore, such construction would render the third subdivision wholly useless and unnecessary, *since the father and mother would, by our act of descents and distribution, be the heirs in case the deceased was a minor or unmarried,* and consequently, included within the class of beneficiaries described in the second subdivision." (Emphasis added.)

*Accord, Blom v. United Air Lines,* 152 Colo. 486, 382 P.2d 993 (1963); *Grogan, et al. v. Denver and Rio Grande Railroad,* 56 Colo. 450, 138 P. 764 (1914).

We add that to construe the words "heir or heirs" to include the parents of a decedent would be to ignore the fact that the legislature has already provided a separate category for them (section (1) (d)), under the conditions imposed.

The language of the statute in question, as interpreted by this court, has remained undisturbed by the legisla-

ture for three-quarters of a century, and in our view excludes plaintiffs from the category of "heir or heirs."

II.

Plaintiffs next argue that the trial court judgment is erroneous in that it denies them the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiffs contend that since they would be entitled to support from decedent under C.R.S. 1963, 36-10-7, if they were paupers, it would be clearly discriminatory to deny them a right to suit while allowing parents of a deceased married minor, or parents of a deceased unmarried child who has reached majority to maintain suit. This, the plaintiffs argue, does not amount to a reasonable classification.

The Supreme Court of the United States in *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), set forth the following rules for testing a statutory classification as discriminatory:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Accord, Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S. Ct. 337, 55 L. Ed. 369.

Based upon the above standards, we are unable to conclude that the classifications made by the statute

in the instant case are discriminatory. Classifications founded on age or marriage, or both, are universally utilized by state legislatures and by the Congress of the United States. Generally these classifications have a relationship to the family structure or upon society's concept of when interfamily relationships change, *Hindry v. Holt, supra.* The payments of benefits under many forms of remedial legislation turn directly upon this concept of classification. Such a classification is reasonable and has a direct relationship to the legislative purpose in the instant case, *i.e.,* to provide death benefits under certain contingencies to those individuals most likely to suffer pecuniary loss. Thus the limitation of the parental right of action by the legislature, based upon the age or marital status of the decedent, was and is a rational classification. The fact that some inequality may result is insufficient to strike down, or reconstruct, the statute.

The judgment is affirmed.

MR. JUSTICE LEE not participating.