Gwen WHITENHILL and William Whitenhill, in their representative capacity for the estate and heirs of Kimberly Prince, and as Mother and Father of Kimberly Prince, Plaintiffs–Appellants,

v.

KAISER PERMANENTE, a Colorado health maintenance organization; Kaiser Foundation Health Plan of Colorado, doing business in the State of Colorado; Joe Marion, M.D.; Michael Gibson, M.D.; Carol Eidsvoog; Norman Mowrey, M.D.; and other providers whose names are unknown at this time, Defendants–Appellees.

No. 96CA0552.

Colorado Court of Appeals, Div. V.

June 26, 1997.

Karen V. Hendrick, Denver, for Plaintiffs–Appellants.

Pryor, Johnson, Montoya, Carney & Karr, P.C., Elizabeth C. Moran, Bruce A. Montoya, Englewood, for Defendants–Appellees.

Opinion by Judge RULAND.

In this wrongful death action, plaintiffs, Gwen and William Whitenhill, seek review of the summary judgment granted in favor of defendants, Kaiser Foundation Health Plan of Colorado, Dr. Joe Marion, Dr. Michael Gibson, Dr. Carol Eidsvoog, and Dr. Norman Mowrey, dismissing their complaint. We reverse and remand for further proceedings.

Plaintiffs' complaint alleged that defendants were negligent in failing to diagnose timely their daughter's ovarian cancer. In response to the complaint, defendants filed a motion for summary judgment. In the motion, they asserted that plaintiffs lacked standing under what is commonly referred to as the Colorado Wrongful Death Act, § 13–21–201, et seq., C.R.S. (1997 Repl.Vol. 6A) to pursue any claim because their deceased daughter left a surviving spouse.

In support of the motion, defendants submitted an affidavit prepared on behalf of the defendants during the course of treatment and signed by the decedent and Alfred E. Taylor, the decedent's alleged common law spouse. The affidavit was executed on January 27, 1994, and stated that the decedent and Taylor had lived together "continuously" as husband and wife since that same date and that, "during this period," they professed to be husband and wife and had held themselves out to the community as being married.

Defendants also submitted an unnotarized affidavit allegedly executed by Taylor in August 1994 in which Taylor stated that he was the common law husband of the decedent, that he understood he had the right to participate in medical decisions concerning the decedent, and that he did not wish to participate in those decisions.

In response, plaintiffs produced affidavits of the decedent's attorney, Taylor, and the decedent's father, plaintiff William Whitenhill. The affidavit of decedent's attorney recites that the decedent told counsel that she was signing documents prepared by defendants that would allow Taylor, a "close acquaintance," to make medical decisions for her. The affidavit also stated that counsel had visited the decedent's home on five occasions and that she observed no evidence that the decedent was living with anyone.

In Taylor's affidavit, he stated that defendants asked him and the decedent to sign an affidavit stating that they were married at common law "for the purposes of providing medical assistance to [the decedent] in the event she was on life support and unable to make decisions for herself."

The decedent's father stated in his affidavit that he had visited the decedent at her apartment during the year before her death and observed nothing to indicate that she was living with Taylor. He also stated that he had no information indicating that the decedent was married by common law until he saw the medical affidavit relied upon by defendants.

The trial court held that plaintiffs had failed to present sufficient evidence to rebut the affidavit of common law marriage submitted by defendants. The court noted that the affidavits of both decedent's attorney and her father indicated only that they were unaware of decedent's marriage, and that Taylor did not specifically deny that he was the decedent's husband in his affidavit. Accordingly, the court found that Taylor was the decedent's spouse for purposes of the Wrongful Death Act.

The trial court also rejected plaintiffs' argument that they could maintain the action under § 13–21–201(1)(a)(III), C.R.S. (1996

Cum.Supp.) which allows the "heir or heirs" of the deceased to bring a wrongful death action in the first year upon the written election of a deceased's spouse. The court held that the term "heir or heirs" refers only to the child or children of the deceased.

### I

■ Plaintiffs first contend that the trial court erred in interpreting the Act to preclude parents from bringing a wrongful death action as heirs if a deceased's spouse elects not to bring the action. We agree with the court's ruling.

■ A wrongful death claim may be maintained in Colorado only as provided in the Act. Because the Act is in derogation of common law, it has been strictly construed. *Ablin v. Richard O'Brien Plastering Co.*, 885 P.2d 289 (Colo.App.1994).

Section 13–21–201(1)(a), C.R.S. (1996 Cum. Supp.) defines persons entitled to sue to recover damages for a wrongful death as follows:

In the first year after such death:

(I) By the spouse of the deceased;

(II) Upon the written election of the spouse, by the spouse and the heir or heirs of the deceased;

(III) Upon the written election of the spouse, by the heir or heirs of the deceased; or

(IV) If there is no spouse, by the heir or heirs of the deceased.

However, the term "heirs" under the Act has been consistently construed to refer only to lineal descendants of the deceased. *See Hindry v. Holt*, 24 Colo. 464, 51 P. 1002 (1897); *Howlett v. Greenberg*, 34 Colo.App. 356, 530 P.2d 1285 (1974). As a result, the term does not include parents of a deceased. *McGill v. General Motors Corp.*, 174 Colo. 388, 484 P.2d 790 (1971); *Potter v. Thieman*, 770 P.2d 1348 (Colo.App.1989).

Only § 13–21–201(1)(c), C.R.S. (1996 Cum. Supp.) of the Act expressly provides standing for parents as follows:

If the deceased is an unmarried minor without descendants or an unmarried adult without descendants, by the father or mother who may join in the suit, and each shall have an equal interest in the judgment; or if either of them is dead, then by the surviving parent.

### A

■ In support of their contention, plaintiffs first maintain that parents historically have been excluded from pursuing claims as heirs because they suffered emotional rather than pecuniary loss. Hence, any damage award to the parents was inconsistent with the intent of the Act to provide compensation to those persons dependent upon the deceased for financial support. Plaintiffs note, however, that in § 13–21–203.5, C.R.S. (1996 Cum.Supp.), adopted in 1988, recovery is authorized for a "solatium" amount in addition to economic damages and in lieu of noneconomic damages. As a result, plaintiffs argue that the General Assembly must have intended for parents to be included as heirs. This argument is unpersuasive.

In 1988, the provisions of § 13–12–201(1) were clarified relative to the preferred right of a spouse to file a wrongful death action during the first year.

■ The 1989 amendments created a right to recover noneconomic damages in addition to pecuniary damages, but did not change or enlarge the class of persons who may bring an action for wrongful death. *Ablin v. Richard O'Brien Plastering Co., supra.*

In connection with these amendments, we must presume that the General Assembly was aware of the prior construction of "heir or heirs" in adopting both modifications. *See Tompkins v. DeLeon*, 197 Colo. 569, 595 P.2d 242 (1979). And, although the General Assembly could have modified those terms to include parents, it did not do so. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480 (Colo. 1985)(court cannot read nonexistent provisions into statute).

### B

As additional support for their contention, plaintiffs also rely upon *Ablin v. Richard O'Brien Plastering Co., supra*, in which the court noted, in dictum, that the Act had been

amended to confer standing upon parents if their deceased child's spouse elects not to sue within the first year after death. Again, we are not persuaded.

If the General Assembly had intended for parents to be included as heirs, then § 13–21–201(1)(c) quoted above would be superfluous. *McGill v. General Motors Corp., supra,* 174 Colo. at 391, 484 P.2d at 791 ("To construe the words 'heir or heirs' to include the parents of a decedent would be to ignore the fact that the legislature has already provided a separate category for them....").  Accordingly, to the extent that *Ablin* is inconsistent with the result we reach here, we decline to follow that decision.

## II

Plaintiffs next argue that questions of fact concerning the existence of the decedent's common law marriage precluded the dismissal of their action premised on the determination that Taylor was her husband. We agree.

A summary judgment is appropriate under C.R.C.P. 56(c) when the pleadings, affidavits, and discovery reveal that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991). However, entry of summary judgment is not warranted absent a clear showing that there exists no genuine issue as to any material fact. *Graven v. Vail Associates, Inc.,* 909 P.2d 514 (Colo.1995).

The moving party has the burden to show that there is no issue of material fact. Once the moving party has met that burden, the nonmoving party must then demonstrate that there is a triable issue. In determining whether the nonmoving party has satisfied this requirement, "the nonmoving party must receive the benefit of all favorable inferences that may be reasonably drawn from the un-

disputed facts," and "we must resolve all doubts against the moving party." *Mancuso v. United Bank,* 818 P.2d 732, 736 (Colo. 1991).

A common law marriage is established by the mutual consent or agreement of the parties to be husband and wife, followed by a mutual and open assumption of a marital relationship. *People v. Lucero,* 747 P.2d 660 (Colo.1987). Absent an express agreement, the two factors considered the most reliable in determining whether an intent to be married has been established are cohabitation and a general reputation in the community that the parties hold themselves out as husband and wife.

Here, the affidavit primarily relied upon by defendants in effect states that the marriage of decedent and Taylor commenced the same day the affidavit was signed and notarized. Conversely, defendants offered neither evidence of cohabitation nor of a general understanding in the community that the parties were husband and wife. Indeed, the affidavits relied upon by plaintiffs indicate just the opposite. Certainly, one might reasonably infer that any marriage would have been disclosed to the decedent's parents.

Accordingly, giving the benefit of all doubts to plaintiffs, we conclude that there exists a genuine issue of fact as to whether any marriage in fact existed.

The judgment of dismissal is reversed, and the cause is remanded for further proceedings consistent with this opinion.

ROTHENBERG and TAUBMAN, JJ., concur.