The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

**2018COA132**

**No. 17CA1109 Hansen v. Barron's Oilfield Serv. Inc. — Torts — Wrongful Death; Damages — Damages for Death by Negligence — Damages for Death**

Plaintiff, Arik Hansen, appealed the district court's dismissal of his wrongful death action against Barron's Oilfield Services, Inc. (Barron's) and its employee Victor Hierro for negligently causing the death of Hansen's daughter. We affirm the judgment.

Hansen's attorneys originally filed this wrongful death action on behalf of the deceased's husband. However, unbeknownst to the attorneys, the husband died prior to their filing the complaint. The attorneys then filed an amended complaint on Hansen's behalf.

Barron's argued that the deceased was married at the time of her death and that, therefore, Hansen, as the deceased's father, did not have standing to bring a wrongful death action under section

13-21-201(1), C.R.S. 2018, which provides that a parent has standing to sue for the death of an adult child only when the adult child was unmarried and had no children. Hansen argued that the relevant time for determining whether a deceased adult was unmarried is when the wrongful death action is filed. The district court agreed with Barron's and dismissed Hansen's case with prejudice.

We affirm the district court's judgment of dismissal because we conclude that the relevant time to determine a decedent's marital status and familial relationships under section 13-21-201(1) is the time of the decedent's death. Thus, here, Hansen did not have standing to bring a wrongful death action for his daughter's death because she was married when she died.

Court of Appeals No. 17CA1109
Adams County District Court No. 16CV31446
Honorable Emily E. Anderson, Judge

Arik Hansen, as the surviving parent of Wendy Ulmer, deceased,

Plaintiff-Appellant,

v.

Barron's Oilfield Service, Inc., a Colorado corporation; and Victor Hierro,

Defendants-Appellees.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by CHIEF JUDGE LOEB
Vogt* and Carparelli*, JJ., concur

Announced September 6, 2018

Bachus & Schanker, LLC, J. Kyle Bachus, Claire Soto, Denver, Colorado, for
Plaintiff-Appellant

Padilla & Padilla, PLLC, Joaquin G. Padilla, Denver, Colorado, for Defendant-
Appellee Barron's Oilfield Service, Inc.

The Ukasick Law Firm, Troy A. Ukasick, Loveland, Colorado, for Defendant-
Appellee Victor Hierro

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     In this wrongful death action, plaintiff, Arik Hansen, appeals the district court's judgment granting the motion to dismiss of defendant, Barron's Oilfield Service, Inc. (Barron's), for lack of standing under the Colorado Wrongful Death Act (WDA).[1] §§ 13-21-201 to -204, C.R.S. 2017.  We conclude that whether the parent of a deceased adult has standing to bring a wrongful death action under section 13-21-201(1) is determined as of the decedent's date of death; thus, under the circumstances here, a parent of an adult deceased does not have standing to sue under the WDA when the deceased was married at the time of her death.  Accordingly, we affirm the judgment and remand with directions.

I.     Background and Procedural History

¶ 2     Wendy Ulmer (Wife) died in an automobile collision with Barron's employee, Victor Hierro, on March 21, 2016.  At the time of her death, Wife was married to Benjamin Ulmer (Husband) and had no children.  It is undisputed that when Wife died, she was married to Husband, and that Husband survived her.

---

[1] The second defendant in this case, Victor Hierro, joined Barron's motion to dismiss below and Barron's answer brief on appeal. Hierro did not file a separate brief on appeal so, for simplicity, this opinion will only refer to Barron's.

¶ 3     On July 29, 2016, the law firm of Bachus & Schanker filed a wrongful death action on Husband's behalf, naming Barron's and Hierro as defendants.  However, apparently unbeknownst to the attorneys, Husband had died of natural causes sometime prior to the filing of the complaint.[2]

¶ 4     Upon learning of Husband's death, Bachus & Schanker filed an amended complaint on September 9, 2016, substituting Hansen, Wife's father (Parent), as the plaintiff.  In October, Barron's filed a motion to dismiss under C.R.C.P. 12(b)(5), arguing for dismissal of the action based on Parent's lack of standing to sue under the WDA.  The motion argued that the WDA must be strictly construed, and that, under section 13-21-201(1)(c)(I), a parent has standing to sue for the death of an adult child only when, as of the date of death, the adult child is unmarried and has no children.  Thus, Barron's argued, Parent did not have standing to sue because Wife was married to Husband at the time of her death.

¶ 5     In his response to the motion to dismiss, Parent argued that the WDA should be liberally construed to conclude that, under the

_____

[2] The record does not indicate the date of Husband's death or why the attorneys were not aware of the death of their client prior to filing a lawsuit on his behalf.

2

circumstances here, where Husband died prior to filing a wrongful death action, Parent should be allowed to file the action. Parent argued that because Husband was dead at the time Parent filed his wrongful death action, Wife was "unmarried" for purposes of section 13-21-201(1)(c)(I) of the WDA.

¶ 6 The district court ruled in favor of Barron's, concluding that, because Wife was a married adult without children on the date of her death, Parent did not have standing under section 13-21-201(1)(c)(I) to bring a wrongful death action. Accordingly, the district court dismissed Parent's action with prejudice, and this appeal followed.

## II. Standard of Review

¶ 7 Although Barron's motion to dismiss was nominally filed pursuant to C.R.C.P. 12(b)(5), for failure to state a claim upon which relief could be granted, the only basis for the district court's order granting the motion was Parent's lack of standing under the WDA to sue for the death of Wife. "Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit." *Sandstrom v. Solen,* 2016 COA 29, ¶ 14 (quoting *Maralex Res., Inc. v. Chamberlain,* 2014 COA 5, ¶ 8). Thus,

3

we analyze the motion to dismiss as a motion under C.R.C.P. 12(b)(1), based on lack of subject matter jurisdiction.

¶ 8    The issue of standing is a legal question that we review de novo. *Sandstrom*, ¶ 14. We employ a mixed standard of review for motions to dismiss for lack of subject matter jurisdiction. *Grant Bros. Ranch, LLC v. Antero Res. Piceance Corp.*, 2016 COA 178, ¶ 15. We review the district court's factual findings for clear error and the court's legal conclusions de novo. *Id.*

¶ 9    We also review a district court's interpretation of a statute de novo. *Id.* Our primary task in interpreting statutes is to give effect to the General Assembly's intent by looking to the statute's plain language. *E.g.*, *Stanley v. Dist. Attorney*, 2017 COA 33, ¶ 10. "To discern the General Assembly's intent, we look to the plain language of the statute, and where that language is clear and unambiguous, we engage in no further statutory analysis." *Hotsenpiller v. Morris*, 2017 COA 95, ¶ 18 (quoting *People v. Rice*, 2015 COA 168, ¶ 11). Where the language of a statute is plain and clear, we must apply the statute as written. *In re 2000-2001 Dist. Grand Jury*, 97 P.3d 921, 924 (Colo. 2004). We must read and consider the statute as a whole in order to give consistent,

4

harmonious, and sensible effect to all of its parts.  *Stanley*, ¶ 10.
However, a statutory interpretation leading to an illogical or absurd
result will not be followed.  *Id.*  Further, we may not adopt a
construction that renders any term superfluous or meaningless.
*Rice*, ¶ 11.

¶ 10     A statute's silence on an issue does not necessarily mean that
the statute is ambiguous.  *In re 2000-2001 Dist. Grand Jury*, 97
P.3d at 924.  "If . . . a statute can be construed and applied as
written, the legislature's silence on collateral matters is not this
court's concern, for we will not strain to construe a statute unless
necessary to avoid an absurd result."  *Id.* (citations omitted).

### III.    Statutory Framework

¶ 11     The WDA creates a statutory right to bring suit for a person's
death resulting from negligence.  Section 13-21-201 is titled
"Damages for death" and governs deaths resulting from the
negligence of railroad employees and common carriers and, of
importance for this case, defines who has the statutory right to file
a wrongful death action and when.  As relevant here, the statute
provides the following:

(1) *When any person dies* from any injury resulting from or occasioned by the negligence, unskillfulness, or criminal intent of any officer, agent, servant, or employee [of a railroad or other common carrier] . . . [the employer] shall forfeit and pay for every person and passenger so injured the sum of not exceeding ten thousand dollars and not less than three thousand dollars, which may be sued for and recovered:

(a) In the first year after such death:

(I) By the *spouse* of the deceased;

(II) Upon the written election of the *spouse,* by the *spouse* and the heir or heirs of the deceased;

(III) Upon the written election of the *spouse,* by the heir or heirs of the deceased; or

(IV) *If there is no spouse,* by the heir or heirs of the deceased or the designated beneficiary, if there is one designated pursuant to article 22 of title 15, C.R.S., with the right to bring an action pursuant to this section, and if there is no designated beneficiary, by the heir or heirs of the deceased;

(b)(I) In the second year after such death:

(A) By the *spouse* of the deceased;

(B) By the heir or heirs of the deceased;

(C) By the spouse and the heir or heirs of the deceased; or

6

> (D) By the designated beneficiary of the deceased, if there is one designated pursuant to article 22 of title 15, C.R.S., with the right to bring an action pursuant to this section, and the heir or heirs of the deceased. . . .

§ 13-21-201 (emphasis added).

¶ 12    Under section 13-21-201(1)(c)(I), parents of the decedent have the statutory right to bring a wrongful death action only under the following limited circumstances:

> If the deceased is an *unmarried* minor without descendants or an *unmarried* adult without descendants and without a designated beneficiary pursuant to article 22 of title 15, C.R.S., by the father or mother who may join in the suit. Except as provided in subparagraphs (II) and (III) of this paragraph (c), the father and mother shall have an equal interest in the judgment, or if either of them is dead, then the surviving parent shall have an exclusive interest in the judgment.

(Emphasis added.)

¶ 13    Here, Wife's fatal car accident did not involve railroads or common carriers. However, section 13-21-202, C.R.S. 2017, creates a statutory right to sue for the death of a person caused by another's wrongful act or negligence:

> When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as

7

> would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

"All damages accruing under section 13-21-202 shall be sued for and recovered by the same parties and in the same manner as provided in section 13-21-201 . . . ." § 13-21-203(1)(a), C.R.S. 2017. Thus, even though Parent filed his wrongful death action pursuant to section 13-21-202, he is bound by the limitations of section 13-21-201(1) defining who may sue and when. § 13-21-203(1); *Pub. Serv. Co. of Colo. v. Dist. Court*, 674 P.2d 383, 384 (Colo. 1984).

## IV. Parent's Standing under the WDA

¶ 14    Parent argues on appeal that the district court erred in dismissing his wrongful death action because it interpreted the WDA too strictly instead of interpreting the provisions of the WDA liberally. He further argues that fairness and public policy dictate that he should be allowed to file a wrongful death action for the

8

death of Wife under the circumstances here. We disagree with both contentions.

## A. Applicable Law

¶ 15 To have standing to prosecute a lawsuit, "a plaintiff must have (1) suffered an injury in fact (2) to a legally protected interest." *C.W.B. v. A.S.*, 2018 CO 8, ¶ 18. As relevant here, to show a legally protected interest, a plaintiff must have a claim for relief under the constitution, the common law, a statute, or a rule or regulation. *E.g.*, *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 10. "The legally protected interest requirement . . . recognizes that 'parties actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights.'" *C.W.B.*, ¶ 18 (quoting *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000)).

¶ 16 Wrongful death actions did not exist at common law and are entirely creatures of statute. *Mitson v. AG Eng'g & Dev. Co.*, 835 F. Supp. 572, 573 (D. Colo. 1993). Sections 13-21-201 to -204, the WDA, "must be construed as one act and each section construed as it is connected with and related to the whole act." *Clint v. Stolworthy*, 144 Colo. 597, 600, 357 P.2d 649, 651 (1960).

9

¶ 17    The pertinent provisions of the WDA have remained

substantively unchanged since their enactment in 1877. *Pub. Serv.*

*Co. of Colo.*, 674 P.2d at 384. As the WDA is currently codified,

section 13-21-201(1) lists the persons who have a right to recovery

(i.e., a legally protected interest) for a person's wrongful death.

Courts interpreting section 13-21-201 and its predecessor have

determined that the surviving spouse, if there is one, has the sole

and exclusive right to file a wrongful death action within the first

year after the death of the deceased. *Hopper v. Denver & R. G. R.*

*Co.*, 155 F. 273, 276 (8th Cir. 1907);[3] *Reighley v. Int'l Playtex, Inc.*,

604 F. Supp. 1078, 1080 (D. Colo. 1985); *Hahn v. Union Pac. R.R.*

*Co.*, 162 F. Supp. 558, 560 (D. Colo. 1958);[4] *Clint*, 144 Colo. at 601,

357 P.2d at 651.

¶ 18    Colorado has vested the right of recovery under the WDA

"solely in the person[s] named in the statute." *Espinosa v. Perez,*

165 P.3d 770, 774 (Colo. App. 2006) (concluding, in part, that a

claim under the WDA cannot be assigned to another because the

statute vests the right of recovery solely in the person named in the

---

[3] In 1907, the Eighth Circuit included Colorado.
[4] Sections 41-1-1 and 41-1-2, C.R.S. 1953, are the predecessors to
sections 13-21-201 and 13-21-202, C.R.S. 2017.

statute); *Campbell v. Shankle*, 680 P.2d 1352, 1353 (Colo. App. 1984) (the terms of recovery for a wrongful death action are determined exclusively from the statute).

¶ 19    Parents of an adult deceased have the right to bring a wrongful death action *only* if the decedent is unmarried and without descendants.  § 13-21-201(1)(c)(I); *Espinosa,* 165 P.3d at 772. Thus, the "parents of a deceased may not bring a wrongful death action when there is a surviving spouse."  *Pub. Serv. Co. of Colo.,* 674 P.2d at 385 (citing *McGill v. Gen. Motors Corp.,* 174 Colo. 388, 391, 484 P.2d 790, 791 (1971)).

¶ 20    The term "unmarried" as used in the WDA refers to someone who is not married at the relevant time, rather than a person who has never been married.  *Myers v. Denver & R. G. R. Co.,* 61 Colo. 302, 305, 157 P. 196, 196-97 (1916).  Section 13-21-201 does not explicitly state the relevant time for determining if the deceased is married or unmarried.

### B.    Analysis

¶ 21    For purposes of our standing analysis under section 13-21-201(1)(c)(I), the dispositive legal issue in this case is what is the relevant time for determining if an adult deceased is "unmarried."

11

The district court concluded that the relevant time is the date of death of the decedent. The court implicitly rejected Parent's argument that the relevant time is the date the lawsuit was filed.[5] For the reasons discussed below, we agree with the district court and, thus, conclude that Parent did not have standing under the WDA to bring this action.

¶ 22    At the outset, we note that the following facts are undisputed:

- Wife was an adult when she died.

- Wife died in a car crash involving a Barron's employee.

- Wife was married to Husband at the time of her death.

- Husband survived Wife.

- Husband died of natural causes prior to filing a wrongful death action for the death of Wife.

- Wife did not have any heirs or descendants, as those terms are interpreted under the WDA.

---

[5] While the district court did not engage in an explicit analysis of the relevant time to make the marital status determination or explicitly reject plaintiff's time of filing argument, it phrased the legal question at issue as: "The crux of the matter here is the marital status of Husband and Wife *at the time of their respective deaths*." (Emphasis added.)

¶ 23    The district court dismissed Parent's action with prejudice, effectively concluding that section 13-21-201(1)(c)(I), by its plain language, precluded Parent from filing a wrongful death action for Wife's death because Wife was a married adult when she died.

¶ 24    Parent's primary argument is that the district court erred in strictly construing the WDA so as to limit the definition of the term "unmarried" to Wife's marital status at the time of her death. Parent asserts that a liberal construction would allow him to bring a wrongful death action for Wife's death because the statute is silent as to the operative time to determine the deceased's marital status.  Thus, we now address the dispositive question in this case — for the purposes of a parent's standing to file a claim pursuant to the WDA, what is the relevant time for determining if the deceased is married or unmarried: the deceased's date of death, as Barron's asserts, or when the wrongful death action is filed, as Parent asserts?  We conclude it is the decedent's date of death.

¶ 25    We begin our statutory analysis by reading the plain language of a statute.  If that language is clear, the statute is unambiguous and we must apply the words as written.  *In re 2000-2001 Dist. Grand Jury*, 97 P.3d at 924; *Hotsenpiller*, ¶ 18; *Stanley*, ¶ 10.  The

13

parties spend substantial time in their briefs on appeal arguing about whether we should apply a liberal or strict construction to the statute.[6] But, we think that dispute simply misses the point of how we go about our statutory analysis in this case. Whether a liberal or strict construction should be applied to a statute is not relevant if the statute at issue is unambiguous. And, for the reasons below, we conclude that the statute is unambiguous.

¶ 26 The statutory language is explicit that parents of a deceased person have the right to bring a wrongful death action *only* when the deceased is unmarried and has no descendants. § 13-21-201(1)(c)(I). Consistent with that statutory language, Colorado cases have recognized that a parent has no right to bring a wrongful death action when there is a surviving spouse. *Pub. Serv. Co. of*

---

[6] Colorado case law supports arguments for both a liberal construction and a strict construction of the WDA. *Compare Martin v. Cuellar*, 131 Colo. 117, 120, 279 P.2d 843, 844 (1955) (stating that because a right of action for damages in the wrongful death context derives solely from statute, the WDA should receive a strict construction), *with Hayes v. Williams*, 17 Colo. 465, 467-68, 30 P. 352, 353 (1892) (noting that provisions of the wrongful death action statutes are remedial and not penal, and that provisions of those statutes should receive a liberal construction). However, we need not decide whether the WDA should receive a liberal or strict construction because the provision at issue here, section 13-21-201(1)(c)(I), is unambiguous.

*Colo.*, 674 P.2d at 385; *Espinosa,* 165 P.3d at 772.  Here, it is undisputed that Husband survived Wife.

¶ 27     Nevertheless, Parent contends that, despite Husband's survival, Parent has the right to file a wrongful death action because Wife was "unmarried" under section 13-21-201(1)(c)(I) when the suit was filed.  Parent argues that because the section is silent on the issue of when the deceased's marital status should be determined, a liberal reading of the statute dictates that the determination should be made as of the date of filing the action, rather than the date of decedent's death.  We are not persuaded.

¶ 28     First, while section 13-21-201(1)(c)(I) does not contain an explicit statement regarding the operative date to determine if the deceased is unmarried, in the context of the statute as a whole, it is clear that the operative date for that determination is the date of death.  A statute's silence on a particular point does not necessarily mean it is ambiguous, if the statute can be construed and applied as written.  *In re 2000-2001 Dist. Grand Jury*, 97 P.3d at 924.  Here, section 13-21-201(1) begins with the words "[w]hen any person dies from any injury . . . ," fixing the relevant time as the date of death. The statute then defines, in detail, who has the right to bring an

15

action within the first year after the decedent's death, and then within the second year after the decedent's death. § 13-21-201(1)(a)-(b). Thus, the entire structure of the statute is based upon the decedent's date of death. Reading the opening language of section 13-21-201(1) together with subsections (a) and (b) strongly indicates that the relevant date for purposes of determining the decedent's familial relationships, including marital status, is the date of the decedent's death.

¶ 29 Second, although there is no Colorado appellate case directly addressing the specific issue here, language in several Colorado cases supports the conclusion that the operative time to determine the deceased's marital status under section 13-21-201(1)(c)(I) is at the date of the deceased's death. In *Myers*, a husband and wife died in a collision with a locomotive; the wife survived her husband by thirty minutes. 61 Colo. at 304, 157 P. at 196. The wife's mother brought a wrongful death action against the railroad company for the wife's death. *Id.* at 302-03, 157 P. at 196. The railroad company argued that the wife's mother did not have standing to sue because wife was a married adult. *Id.* at 303, 157 P. at 196. The supreme court phrased the issue in the case as

follows: "Was . . . the daughter of plaintiff, . . . who survived her husband 30 minutes, an 'unmarried' woman *at the time of her death*, within the contemplation of the statute . . . ?" *Id.* (emphasis added). The court determined that, because the wife's spouse predeceased her by thirty minutes, she was "unmarried" for purposes of filing the action, and therefore, the mother had standing to bring a wrongful death action against the railroad company. *Id.* at 305-06, 157 P. at 197. Thus, the court in *Myers* explicitly analyzed the decedent's marital status as of the time of her death.

¶ 30 Similarly, in *McGill*, the supreme court described the operative facts in that case as follows: "*At the time of his death*, the decedent was 23 years of age, married and childless. He was survived by his parents and his wife." 174 Colo. at 389, 484 P.2d at 790 (emphasis added). Again, this language indicates that a decedent's familial relationships are to be determined at the time of death. The *McGill* court determined that the decedent's parents did not have the right to bring a wrongful death action even though the decedent's wife did not bring suit within the first year after his death. *Id.* at 391,

17

484 P.2d at 791 (holding specifically that parents of a deceased are not considered "heirs" under the WDA).

¶ 31     In another case, a division of this court reversed a "judgment of dismissal" and remanded to the trial court for further proceedings because there existed a genuine issue of material fact as to whether the decedent was part of a common law marriage at the time of her death, which would have precluded her parents from filing a wrongful death action. *Whitenhill v. Kaiser Permanente*, 940 P.2d 1129, 1132 (Colo. App. 1997).

¶ 32     Finally, in *Hopper*, 155 F. at 276, in describing how the order of the various subdivisions in the WDA should be interpreted for purposes of determining when parents of a deceased have a right to sue, the court held that the statute should be interpreted to allow a suit as follows: "If such deceased be a minor or *unmarried*, and leave no surviving husband or wife and no surviving child, then by the father and mother." *Id.* (emphasis added).

¶ 33     In each of the cases discussed above, it is clear that the court's analysis used the time of the decedent's death as the operative time for determining the decedent's marital status and familial relationships. We have found no case law, and Parent has

not cited any, that supports the conclusion that the operative time for determining a decedent's marital status is the time of filing the wrongful death action.

¶ 34    Third, Parent's proposed interpretation of the statute would, in our view, allow for a posthumous change of a decedent's marital status, which is an absurd result. *See, e.g., Agilent Techs., Inc. v. Dep't of Revenue*, 2017 COA 137, ¶ 31 (stating that we do not interpret a statute in such a way as to render any part of it meaningless or absurd). In effect, Parent asks us to conclude that a person's marital status can change when that person is no longer alive.

¶ 35    Additionally, were we to accept Parent's interpretation of the statute (that the decedent's marital status should be decided at the time of filing the suit), the delineation in section 13-21-201(1)(a)-(b), of who may sue in the first and second year after death, would be rendered meaningless. *Agilent Techs., Inc.,* ¶ 31. If a decedent's familial ties and relationships can change after a person dies, the class of persons who have a right to file an action under the WDA would become fluid (children can be born, spouses can die, parents

can die, etc.) and the basic structure of the statute would be fundamentally altered.

¶ 36    Parent's interpretation would also require us to, essentially, add language to section 13-21-201(1)(c)(I), by creating an exception to the very limited circumstances under which a parent may file a wrongful death action. *See, e.g., Johnson v. Civil Serv. Comm'n*, 2018 COA 43, ¶ 24 (when we interpret a statute, we cannot add or imply words that are not there). Parent's exception-creating interpretation would require the statute to read as follows: if the deceased is married at the time of death, but the surviving spouse dies before filing a wrongful death action, the parents of the deceased may file such action. We will not adopt an interpretation that effectively adds language to the statute. *See id.*

¶ 37    Fourth, Parent argues that fairness and policy considerations dictate that he should be able to maintain a wrongful death action for Wife's death when Husband died and was unable to file such an action. These policy arguments are better suited for the General Assembly and not this court. *E.g., Ruybalid v. Bd. of Cty. Comm'rs*, 2017 COA 113, ¶ 18 ("[M]atters of public policy are better addressed by the General Assembly," not this court.) (*cert. granted* Apr. 30,

20

2018).  We presume that the General Assembly was aware of relevant court decisions when amending the WDA, and it has had many years and opportunities to enlarge the circumstances under which parents can bring a wrongful death claim.  *Whitenhill*, 940 P.2d at 1131.  It has not done so, and, under the circumstances here, it is not the role of this court to do so.[7]  *Ruybalid*, ¶ 18. Moreover, when, as here, "a statute is unambiguous, public policy considerations beyond the statute's plain language have no place in its interpretation."  *Samuel J. Stoorman & Assocs., P.C. v. Dixon*, 2017 CO 42, ¶ 11.

## V.    Attorney Fees on Appeal

¶ 38    Barron's requests attorney fees on appeal pursuant to C.A.R. 39; C.A.R. 39.1; sections 13-17-201 and 13-16-113(2), C.R.S. 2017; and C.R.C.P. 54(d).  Because we affirm the district court's dismissal

---

[7] Although not in the record, both parties appear to acknowledge that Husband's estate has subsequently commenced a wrongful death action for Wife's death.  Thus, contrary to Parent's contention, our holding in this case does not mean that Barron's is being "rewarded" for "killing [Wife] rather than simply injuring her." Indeed, if we were to decide in favor of Parent, his suit and the estate's suit would be in opposition to one another because the WDA is explicit that there can only be one cause of action maintained for the wrongful death of a decedent.  § 13-21-203, C.R.S. 2017; *Pub. Serv. Co. of Colo. v. Dist. Court*, 674 P.2d 383, 385 (Colo. 1984).

of this entire case pursuant to C.R.C.P. 12(b), we grant the request of Barron's for attorney fees under section 13-17-201 and C.A.R. 39.1, and we remand to the district court for a determination of the appropriate amount of attorney fees incurred on appeal. *E.g.*, *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608-09 (Colo. App 2008).

## VI. Conclusion

¶ 39    The judgment is affirmed, and the case is remanded with directions for a determination of the appropriate amount of attorney fees incurred on appeal.

JUDGE VOGT and JUDGE CARPARELLI concur.